UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

G.K. LAS VEGAS LIMITED PARTNERSHIP,   )
                                      )
                    Plaintiff,        )     Case No.  2:04-cv-01199–DAE-GWF
                                      )
vs.                                   )     **ORDER**
                                      )
SIMON PROPERTY GROUP, INC., et al.,   )     **Defendant's Motion to Compel - #262**
                                      )
                    Defendants.       )
_____)

        This matter is before the Court on Defendant Simon Property Group, Inc.'s Motion to Compel Plaintiff to Complete Electronic Searches For Relevant Documents And to Comply With Other Discovery Undertakings (#262), filed on December 11, 2007; Plaintiffs' Opposition to Defendants' Motion to Compel (#282), filed January 15, 2008; and Defendant's Reply Memorandum in Support of Motion to Compel Plaintiff to Complete Electronic Searches for Relevant Documents and to Comply with Other Discovery Undertakings (#286), filed January 26, 2008.  The Court conducted a hearing in this matter on February 19, 2008.

## BACKGROUND AND DISCUSSION

        Defendant's Motion (#262) addresses a number of discovery issues that may require a motion to compel and court action.  At this point, however, the only issue raised in Defendant's motion on which the parties have reached an impasse is whether Plaintiffs should be compelled to conduct electronic searches for relevant documents on the individual office computer hard drives of five present or former principal employees of Plaintiff: Craig Gordon, Peter Fine, Julie Morrison-King, Julie Rosten, and Leslie Shoji.

To place this motion in context, the Court notes, in a summary manner, that Plaintiffs' Third Amended Complaint (#279), filed on January 10, 2008, alleges that over a period of several years during the 1990's and into 2003, Defendants engaged in a pattern of fraudulent and coercive conduct which was intended to force Plaintiff GKLV to sell its 40% limited partnership interest in the Forum Development Limited Partnership ("FDLP") to Defendant Simon, the managing partner and majority owner.  Plaintiffs further allege that Defendants made fraudulent statements concerning the actual value of the partnership property, the Forum Shoppes mall, and withheld and prevented Plaintiffs from obtaining accurate information so that Plaintiff would be misled into undervaluing the partnership.  In January 2003, GKLV made an offer pursuant to the buy-sell agreement to sell its interest in the FDLP for $173,966,650 or to purchase Simon's interest for $240,733,350.  *Third Amended Complaint (#279)*, ¶ 190.  On February 7, 2003, Simon elected to purchase GKLV's interest for $173,966,650.  Plaintiffs allege that the partnership actually had a value of approximately $1 billion at the time Simon exercised its option to purchase GKLV's interest.  Plaintiffs seek recovery of  compensatory, punitive and treble damages and/or equitable relief against Defendants, including the rescission of the buyout agreement of GKLV's partnership interest and the imposition of a constructive trust.  Plaintiffs' claims, therefore, exceed several hundreds of millions of dollars.

Due to an automatic stay order that was previously in effect, discovery did not commence in this case until late 2006.  The parties thereafter exchanged discovery requests, including requests for production of documents, many of which are in electronic format.  The parties expended several months negotiating agreement(s) regarding the production of electronic documents, including the relevant time period for which potentially relevant documents would be searched and produced, the search terms to be used to identify relevant documents, and the data bases, i.e., servers and/or individual computer hard drives of various principal employees/custodians that would be searched.  There is no dispute that the five custodians at issue were identified as principal employees of Plaintiff during the relevant discovery period who may have received or generated relevant emails or other documents.  Defendants contend that there was an agreement by the parties that as to specifically identified "custodians", each party

1   would perform electronic searches on their individual office computers.[1]  According to Defendants, the

2   parties also agreed that the custodians' home or personal-use computers would not be subject to

3   electronic searches unless the custodians used them for work purposes and potentially stored relevant

4   documents on those computers.  Defendants state that in compliance with this agreement, they

5   performed electronic searches on the office computers of their custodians, the number of which is

6   substantially greater than the custodians identified by Plaintiffs.

7          According to Defendants, Plaintiffs have produced very few emails or other electronic

8   documents regarding its principal employees, including the five custodians who are the subject of the

9   motion:  Craig Gordon, Peter Fine, Julie Morrison-King, Julie Rosten, and Leslie Shoji.  Defendants

10  allege that this is or may be due to the failure of Plaintiffs to preserve servers and computers and to

11  prevent the deletion of email from computer servers even after Plaintiffs were in anticipation of

12  litigation in this case.  Defendants further allege that Plaintiffs have an inadequate back-up tape system

13  to preserve information that has been automatically deleted from their active computer servers.[2]

14         Defendants state that they only learned in September 2007, when they took the Rule 30(b)(6)

15  depositions of Plaintiff's PMK's regarding electronic production, that Plaintiffs did not, in fact, perform

16  electronic searches on the office computers of Craig Gordon, Peter Fine, Julie Morrison-King, Julie

17  Rosten, and Leslie Shoji.  Instead, as confirmed by Plaintiffs in their Opposition (#282), Defendants

18  were subsequently informed that Plaintiffs' counsel had conferred with the foregoing custodians who

19  advise that they did not save or store email or other electronic documents on the hard drives of their

20  individual office computers.  Based on the custodians' statements, Plaintiffs contend that there is no

21  reason to believe that any relevant emails or documents are located on their individual office computer

22  hard drives and electronic searches of those hard drives are unnecessary.  As a compromise, Plaintiffs

24  [1]The Court uses the term "individual office computer", as opposed to "personal computer" or

25  "PC", to clearly distinguish between computers that were used by employees for work purposes from personal computers that they used for non-work-related purposes.

26  [2]Each party accuses the other of "spoliation" of relevant evidence.  These accusations have not

27  been substantiated by either party or made the subject of an actual motion for sanctions.  The Court makes no finding that "spoliation" has, in fact, occurred and this order is not to be read as containing

28  any such finding.

3

1   offered to perform the electronic searches if Defendants agree to pay for them.  Plaintiffs advise that the

2   cost for imaging the hard drives and performing the electronic searches is roughly $20,000.

3        Defendants contend that the custodians' alleged statements do not justify Plaintiffs' failure and

4   refusal to perform electronic searches of those hard drives.  First, Defendants argue that Plaintiffs

5   should be required to abide by their prior agreement to perform such searches.  Second, Plaintiffs have

6   not provided sworn affidavits by the employees that they did not save or store relevant documents on

7   their individual office computer hard drives.  Third, even if such affidavits were provided, the requests

8   for relevant emails and documents go back many years and the custodians' statements that they never

9   saved emails or other documents to their individual hard drives are inherently unreliable.  Defendants

10  also note that Plaintiffs' PMK regarding electronic production testified that the computers of all

11  employees were configured so that documents saved to the commonly used "My Documents" directory

12  were saved to the local PC hard drive.  *See Motion (#262)*, p. 3; *Exhibit "H'"*, p. 142.  It was also

13  standard practice to transfer saved documents from the old computers to the new ones when employees'

14  office computers were replaced.  *Id., Exhibit "H'"*, pp. 120-121.  Defendants also contend that in

15  regard to the few office computers of other persons that Plaintiffs did search, relevant documents were

16  discovered thereon.  Finally, Defendants argue that because Plaintiffs did not timely institute a

17  "litigation hold" to prevent the deletion or destruction of relevant documents from their servers, the

18  custodians' individual office computer hard drives may be the only existing location of relevant

19  documents.

20       The Court has the discretion under Fed.R.Civ.Pro. 26(b)(2)(C) to limit or preclude discovery if

21  the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the

22  needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake

23  in the litigation and the importance of the proposed discovery in resolving the issues.  The Court does

24  not read the cases cited by Defendants as establishing a *per se* rule that electronic searches of individual

25  employees' officer computer hard drives are always in order.  Rather, those cases indicate, consistent

26  with Rule 26, that such discovery is proper given the broad scope of relevancy and where there is a

27  reasonable likelihood that relevant information may be found on the computer hard drives.  *See e.g.*

28  *Amsted Industries, Inc.*, 2002 WL 3184956 (N.D.Ill 2002) *2; *Wingnut Films, Ltd. v. Katja Motion*

4

1   *Pictures, Corp.*, 2007 WL 2758571 (C.D.Cal. 2007).  As Plaintiffs also note, the Court has the

2   discretion to apportion the costs and burdens of discovery in a manner that is fair and reasonable,

3   including requiring the party requesting expensive electronic discovery to pay the cost of producing it.

4   *Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 37-38 (D.Md. 2000); *Simon Property Group,*

5   *L.P. v. mySimon, Inc.,* 194 F.R.D. 639, 641-642 (S.D. Ind. 2000); *Balboa Threadworks, Inc.*, 2006 WL

6   763668 (D.Kan. 2006).

7          Notwithstanding the custodians' alleged statements, there is reason to believe that relevant

8   documents may be contained on the hard drives of their individual office computers.  The

9   reasonableness of requiring that such searches be conducted is supported by the fact that documents

10   which may have previously existed on the common servers are no longer available.  The Court also

11   agrees with Defendants that the employees' statements that they never saved documents to their

12   individual office computer hard drives is not sufficiently reliable to justify a decision not to conduct

13   such searches.  Plaintiffs' Third Amended Complaint sets forth in substantial detail Plaintiffs'

14   allegations that over a period of many years from the 1990's into 2003, they were denied access to

15   partnership documents and information and were coerced into selling their limited partnership interest.

16   Given these allegations, it is reasonable to infer that Plaintiffs are or were in possession of emails and

17   other documents relating to those matters.  Although neither party has provided the Court with detailed

18   information regarding the foregoing custodians' involvement in the matters at issue, there appears to be

19   no material dispute that they have knowledge of relevant information relating to Defendants' alleged

20   conduct and/or whether Plaintiffs relied to their detriment on Defendants' alleged misrepresentations

21   and concealment of information.  The Court, therefore, concludes that Plaintiffs should be required to

22   perform electronic searches on the individual office computer hard drives of Craig Gordon, Peter Fine,

23   Julie Morrison-King, Julie Rosten, and Leslie Shoji.

24          The amount in controversy in this case is great.  Both parties have substantial financial

25   resources to litigate and bear the costs of discovery.  The burden of electronic discovery imposed on

26   Defendants is at least as great, if not greater, than the burden on Plaintiffs.  Defendants, for their part,

27   have complied with the arguable agreement that each party would perform electronic searches on their

28   custodians' individual office computer hard drives.  The Court therefore concludes that shifting the cost

5

1  of the subject searches to Defendants is not warranted and Plaintiffs should bear the cost of performing

2  the searches.

3        Because the other issues raised in Defendant's motion are not yet ripe for motion or decision,

4  the Court does not address them here.  Accordingly,

5        **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Plaintiff to Complete

6  Electronic Searches For Relevant Documents And to Comply With Other Discovery Undertakings

7  (#262) is **granted** as follows:

8        Plaintiffs shall forthwith perform electronic searches on the individual office computer hard

9  drives of Craig Gordon, Peter Fine, Julie Morrison-King, Julie Rosten, and Leslie Shoji, pursuant to the

10  electronic search protocol previously agreed to by the parties.  Plaintiffs shall bear the expense for

11  performing such searches.

12        DATED this 22nd day of February, 2008.

13

14  GEORGE FOLEY, JR.
    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28