IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| G.K. Las Vegas LIMITED PARTNERSHIP, a California limited partnership, and SHELDON GORDON, | ) ) ) ) | Case No. 2:04-cv-01199-DAE-GWF |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SIMON PROPERTY GROUP, INC., a Delaware corporation; et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER VACATING IN PART AND AFFIRMING IN PART
THE MAGISTRATE JUDGE'S ORDER;  ORDER GRANTING DEFENDANTS'
OBJECTION TO PLAINTIFFS' REPLY BRIEF

Pursuant to Local Rule IB 3-1, the Court finds this matter suitable for

disposition without a hearing.  After reviewing Plaintiffs' Objections to Magistrate

Judge Foley's Order ("Plaintiffs' Objections") (Doc. # 333) and the supporting and

opposing memoranda, the Court VACATES IN PART AND AFFIRMS IN PART

Magistrate Judge Foley's June 11, 2008 Order on the Motion to Compel (Doc. #

323), as follows:  Defendants' Motion to Compel (Doc. #303) with respect to

Discovery Requests Nos.122 and 124 and those documents in Discovery Request

No. 123 that are after January 11, 2003, is DENIED.  Defendants' Motion to

Compel with respect to Discovery Request No. 123 is GRANTED IN PART.

Defendants are entitled to those documents created prior to or on January 11, 2003.

Defendants' Objection to Plaintiffs' Reply Brief is GRANTED.

<u>BACKGROUND</u>

G.K. Las Vegas Limited Partnership ("GKLV") and Sheldon Gordon, (collectively "Plaintiffs") were partners with the  Simon Property Group and other related defendants ("Defendants") in a Nevada joint venture named Forum Developers Limited Partnership ("FLDP").  FLDP owned and operated the Forum Shops retail mall adjacent to Caesars Palace casino in Las Vegas.  Defendants were the managing general partner of FLDP, and Plaintiffs were the limited partners. The FLDP Agreement contained a buy-sell provision for the expeditious dissolution of the partnership.  Under the terms of this buy-sell provision, Plaintiffs had the right to tender in writing to Defendants an all-cash price for a pro rata share whereby the Defendants would either buy Plaintiffs' entire interest in the partnership or the Defendants would sell their entire interest in the partnership to Plaintiffs.

On January 11, 2003, Plaintiffs made a buy-sell offer to Defendants pursuant to the buy-sell provision in which Plaintiffs would sell their interest for $173,966,650 or purchase Defendants' interest for $240,733,350.  On February 7,

2

2003, Defendants chose to buy Plaintiffs' interest for $173,966,650 (the "Sale Proceeds").  Plaintiffs claim now that the FLDP had a value of approximately $1 billion at the time Defendants exercised its option to purchase, and therefore Plaintiffs' interest at that time was much more than the Sale Proceeds and should have been more than  $400,000,000.  Plaintiffs allege that Defendants made material misrepresentations and/or omissions that caused Plaintiffs to undervalue their own partnership interest in FLDP.

A few months prior to the buy-sell offer, Plaintiffs had succeeded in gaining the support of Taubman Realty Group Limited Partnership ("Taubman") and Taubman's bankers to finance Plaintiffs buy-sell rights should Defendants choose to sell rather than to buy.  Defendants argue that Plaintiff Gordon's promise to invest tens of millions of dollars of the sale proceeds in Taubman securities had Defendants chosen to sell, secured Taubman's backing for the buy-sell.  (Defs. Resp. to Objections at 3.)  Defendants argue that Plaintiff Gordon discussed with Taubman that if Defendants elected to be a buyer in the buy-sell, Plaintiff Gordon would purchase up to $75 million of Taubman securities, including open-market purchases, at a predetermined price of $22 per share at a time when Taubman's stock was trading at $16 per share and Taubman was urging its shareholders to reject Defendants tender offer at $18 per share.  (Defs. Resp. to Objections at 14.)

Defendants further contend that following the February 7 sale of Plaintiffs' interest in FLDP, Plaintiff Gordon invested a portion of the Sale Proceeds in Taubman securities.  Defendants believe that Plaintiff Gordon may have profited handsomely from this investment in Taubman.  (Defs. Resp. to Objections at  3.)

In this case, Plaintiffs make federal law claims for violations of the Securities Exchange Act of 1934 under Section 10(b), 15 U.S.C. § 78j(b), the Securities Exchange Act Rule 10(b)-5, 17 C.F.R.  §  240.10b-5, and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).  Plaintiffs make state law claims for breach of fiduciary duty, fraud in violation of Nevada Securities law and fraud in the inducement, negligent misrepresentation, unjust enrichment, and rescission of the buyout of their interest in FLDP based on Defendants' alleged material misrepresentation and/or omissions.  Plaintiffs request that the Court impose a constructive trust upon the income and receipts of the FLDP to which they are entitled.

On April 24, 2008, Defendants filed a Notice of Motion and Motion to Compel Plaintiffs to Produce Documents and to Provide Deposition Testimony ("Motion to Compel") (Doc.  303.)  Defendants sought to compel Plaintiffs to produce documents relating to their investment or use of the Sale Proceeds in Taubman securities and any profits Plaintiffs derived from such use or investment

in Taubman.  The specific discovery requests are as follows:

> Request No.  122:
> All documents reflecting [the] purchase, sale or exchange
> of securities issued by Taubman Realty, Taubman
> Centers Inc., and /or their respective affiliates and/or
> predecessors, from January 1, 2002 to the date of
> [Plaintiffs'] responses to these document requests.

> Request No.  123:
> All documents reflecting or relating to any actual or
> contemplated agreement or arrangement to purchase, to
> sell, or to exchange securities issued by Taubman Realty,
> Taubman Centers Inc., and /or their respective affiliates
> and/or predecessors, including, without limitation, any
> actual or contemplated agreement to purchase securities
> in the open market as stated in GKLVP00019043.

> Request No. 124:
> All documents related to the [Plaintiffs'] use of funds
> received as a result of the exercise of the buy-sell
> provision of the Amended [FLDP] Agreement, including,
> without limitation, all documents relating to investments
> made with those funds in any business entity, real estate
> project, or other matter.

On May 12, 2008, Plaintiffs filed their Response to the Motion to

Compel (Doc. # 310), and on June 3, 2008, Defendants filed their Reply to the

Response to the Motion to Compel (Doc. # 320.)  On June 11, 2008, the Magistrate

Judge issued an Order granting the motion to compel Plaintiffs to

produce documents and provide deposition testimony ("Magistrate Judge's Order")
(Doc. # 323.)

The Magistrate Judge found that "information regarding the profits or
income that the Plaintiffs have derived from the proceeds of the buyout agreement
is relevant to the rescission claim and calculated to lead to the discovery of
admissible evidence," (Magistrate Judge's Order at 5), and hence the Magistrate
Judge granted Defendants' Motion to Compel.

On June 25, 2008, Plaintiffs filed Plaintiffs' Objections to the
Magistrate Judge's Order.  (Doc. # 333.)  On July 14, 2008, Defendants filed
Simon Property Group, Inc.'s Response to Plaintiffs Objections to Magistrate
Judge Foley's June 11, 2008 Order ("Defendants' Response to Objections") (Doc.
# 341.)  On July 25, 2008, Plaintiffs filed Plaintiffs' Reply Memorandum in
Further Support of Plaintiffs' Objections to Magistrate Judge Foley's June 11,
2008 Order (Doc. # 346.)  On July 29, 2008 Defendants filed an Objection to
Plaintiffs' unauthorized Reply brief (Doc. # 347.)

## STANDARD OF REVIEW

Local Rule IB 3-1 provides that "[a] district judge may reconsider any
pretrial matter referred to a magistrate judge in a civil . . . case . . . where it has
been shown that the magistrate judge's ruling is clearly erroneous or contrary to

law." LR IB 3-1. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The Ninth Circuit similarly finds, "[w]here a magistrate is designated to hear a discovery motion, '[a] judge of the court may reconsider any pretrial matter, where it has been show that the magistrate's order is clearly erroneous or contrary to law.'" Rockwell Int'l, Inc. v. Pos-A-Traction, Inc., 712 F.2d 1324, 1325 (9th Cir. 1983) (quoting 28 U.S.C. § 636(b)(1)(a)).

"A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." Conant v. McCoffey, No. C 97-0139, 1998 WL 164946, at *2 (N.D. Cal. March 16, 1998). "The reviewing court may not simply substitute its judgment for that of the deciding court." Grimes v. City and County of San Francisco, 951 F.2d 236, 241 (9th Cir. 1991).

Legal conclusions are freely reviewable de novo to determine whether such conclusions are contrary to law. Wolpin v. Phillip Morris Inc., 189 F.R.D. 418, 422 (C.D. Cal 1999); see United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984), overruled on other grounds, Estate of Merchant v. C.I.R., 947F.2d 1390 (9th Cir. 1991).

## DISCUSSION

I. Objections to the Magistrate Judge's Order

The legal issues in the instant case concern the relevance of the discovery requests to Plaintiffs' rescission and fraud claims and Defendants' unclean hands defense, and whether the requests are calculated to lead to discoverable evidence. With regard to the rescission claim, the critical issue is whether benefits derived from the investment of Sale Proceeds in Taubman need to be considered in deciding whether to grant rescission, and whether such benefits constitute "benefits derived" from the bargain or "fruits of the bargain" that must be disgorged by Plaintiffs as a set-off for any distributions that Defendants may be required to pay to Plaintiffs should rescission be granted. With regard to the claim of fraud and the defense of unclean hands, the critical issue is whether any of the discovery requests are relevant to Defendants' ability to rebut the claim of fraudulent misrepresentation.

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Although the 2000 amendment to Rule 26(b) narrowed slightly the

scope of discovery, relevancy under Rule 26 remains broad.  EEOC v. Caesars

Entertainment, Inc., 237 F.R.D. 428, 431-32 (D. Nev. 2006).

In this case the Magistrate Judge determined that any profits or

benefits that Plaintiffs have derived from the use of the Sale Proceeds under the

buy-sell agreement are relevant to the determination of whether to grant rescission

or to the determination of equity if rescission is granted.  The Magistrate Judge

reasoned that the profits Plaintiffs derived from the use of the proceeds are relevant

to deciding whether Defendants are entitled to a set-off  for any distributions they

may be required to pay to Plaintiffs.  Specifically the Magistrate Judge found that

> But for that agreement, Plaintiffs would not
> have had $173,966,650 to invest in other
> assets from which they have possibly
> derived substantial income or profits.  Thus,
> the Court may determine that it is proper to
> require Plaintiffs to return those profits, or a
> portion thereof, or to grant Defendants a set-
> off for any distributions they may be
> required to pay to Plaintiffs for the period
> since February 2003.

(Magistrate Judge's Order at 4-5.)

Such reasoning fails, however, to consider and apply the Direct

Product Rule to a claim for rescission.  Under rescission the buyer returns to the

other the subject of the transaction, plus any other benefit received from the subject

of the transaction, and the seller returns the consideration furnished plus interest.

9

Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment, 189 F.3d 1017, 1031 (9th Cir. 1999).  Such interest should be legal interest.  Briney v. Mortimor, 92 F.2d 800,801 (9th Cir. 1937).  Under the Direct Product Rule the party seeking recision is required to only credit the other party with benefits that are the direct product of the property acquired by the party seeking rescission, and are not required to credit tangential or merely collateral benefits.  See Randall v.  Loftsgaarden, 478 U.S. 647, 658 (1986).  "Direct Product" means "that which is derived from the ownership or possession of the property without the intervention of an independent transaction by the possessor."  Restatement (First) of Restitution § 157, cmt. b (1937).

Randall involved a determination whether tax benefits received by a defrauded investor constitute "income received" under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l (2).  In dicta, the Supreme Court referred to the common law doctrine of the Direct Product Rule and concluded that if the case before them were not one of statutory construction and were to be decided by common law, "it is quite likely that tax benefits would be ignored for purposes of a rescissory remedy," because of the Direct Product Rule.  Randall, 478 U.S. at 658. This is because "tax benefits, because they accrue only if the tax deductions or credits the investments throw off are combined with income generated by the

investor or taxes owed on such income, would in all likelihood not have been deemed a direct product of the security at common law." Id.

In Wallenta v. Moscowitz, 839 A.2d 641 (Conn. App. 2004) the Appellate Court of Connecticut used the Direct Product Rule to overturn a Connecticut Superior Court's decision.  The plaintiff in that case had purchased land from the defendant and later claimed fraudulent misrepresentation.  The plaintiff had received a benefit from the purchase in the form of a tax deduction on the interest she paid on a mortgage loan.  The parties agreed to bifurcate the issues of liability, which was tried to the jury, and the remedy, which was tried to the court.  The jury returned a verdict in favor of the plaintiff; the trial court ordered the contract rescinded and credited the defendant with the tax deduction taken by the plaintiff.  The defendant appealed, and the plaintiff cross appealed, claiming that the trial court had improperly credited the defendant for purposes of a rescissory remedy by giving to the defendant the value of her tax deduction, which she believed was a collateral benefit.  The Appellate court ruled that "[b]ecause any benefit the plaintiff here may have derived from deducting her mortgage interest payments on her income tax returns was not the direct product of her ownership of the premises, the court improperly credited the defendant with the tax deduction in calculating the restitution due the plaintiff." Id.  at 662.

11

Here, the Magistrate Judge cited <u>Awada v. Shuffle Master</u>, 173 P.3d 707, 713 (Nev. 2007), and <u>Bergstrom v. Estate of Devoe</u>, 845 P.2d 860 (Nev. 1993) as general authority on the legal theory of rescission, and cited <u>Woodling v. Garrett Corp.</u>, 813 F.2d 543, 561 (2nd Cir. 1987) (1987) and <u>Reyna v. State National Bank of Iowa Park</u>, 911 S. W. 2d 851 (Tex. Ct. App. 1995) for elucidation on what constitutes a "benefit derived" from a bargain.  None of the cases, however, support the holding that benefits gained by the party seeking rescission from use of the cash in an independent transaction made after the sale are fruits of the bargain that need to be disgorged.  Neither do any of the ultimate results in those cases conflict with the Direct Product Rule or its underlying reasoning.

For example, on the issue of rescission the Magistrate Judge quotes the Nevada Supreme Court in <u>Awada</u>, 173 P.3d at 713, for the proposition that "[r]ecision is an equitable remedy which totally abrogates a contract and which seeks to place the parties in the position they occupied prior to executing the contract."  This reasoning was applied in <u>Awada</u> to dismiss a breach of contract claim brought by the party guilty of fraudulent inducement after the contract had been rescinded.  <u>Id.</u> at 713.  The court reasoned that once there had been a valid rescission of a contract,  no cause of action for breach of contract could exist. The

court did not attempt to determine the scope of a benefit derived from the contract nor try to abolish collateral benefits derived from the contract Id.  at 713-14.

The Magistrate Judge also quoted Bergstrom, 845 P.2d at 861, as follows "the defendant should not by rescission sacrifice the benefits of the agreement and at the same time not be restored the benefits he previously conferred upon the plaintiff."  This reasoning was applied in Bergstrom only to support that once a rescission has been granted, the injured party is precluded from recovering damages.  Id. at 577-78.  Again, there was no discussion of the Direct Product Rule nor any discussion of what in general constituted a benefit conferred upon a plaintiff through an agreement and whether the plaintiff's benefits were collateral or not to the agreement.  Hence, there is no support under the general theory of rescission that the seller need return more than the sale proceeds along with legal interest.

As to the issue of "fruits of the bargain," the Magistrate Judge states, "[a] plaintiff seeking rescission of a contract must disgorge 'the fruits of the bargain' and that such fruits include the benefits derived from possession of the property such as interest on moneys conveyed or net profits from a conveyed

13

business."  (Magistrate Judge's Order at 4) (citing Woodling[1], 813 F.2d, at 561).

On the issue of "benefits derived" there is a citation in Woodling to The

Restatement (Second) of Contracts § 384 cmt. a (1981).  Woodling, 813 F.2d at

561.  Comment (a) states, "[i]f a party has received land, goods or other property,

he is expected to return it.  The fact that he has benefitted from possession of them

does not preclude restitution."  The reference is to "land, goods or other property."

There is no implication that benefits can be extended to independent investments of

cash conferred to third parties.  Indeed, Woodling only mentions "interests on

money conveyed" as a "fruit of the bargain."

 In Reyna the plaintiff, a partner in Reyna Construction Company,

signed an agreement, referred to as a Renewal and Extension and/or Modification

of Loans agreement, to consolidate five existing partnership loans that his company

had with State National Bank, the defendant.  The notes on those loans were in

default, and plaintiff agreed to pay a first installment on the loans on December 1,

1990, but he missed the payment date.  State National initially refused but finally

granted permission for Reyna to sell a truck and apply the proceeds to the note.

---

[1]On the issue of disgorgement of fruits of the bargain there is a citation in
Woodling to Pacelli Brothers Transp., Inc. v. Pacelli, 456 A.2d 325, 330 (Conn.
1983).  Woodling, 813 F.2d  at 561. However, in Pacelli, the plaintiffs elected to
seek damages rather than rescission.  Pacelli, 456 A.2d at 330.

Reyna then missed a January 1, 1991 payment date.  State National accelerated the notes and then posted foreclosure of plaintiff's home.  The plaintiff sued the bank, contending that he had been led to believe the bank would forbear payments through the winter if he agreed to take all of Reyna Construction's assets in his name.  The bank counterclaimed for payment of the notes.  The trial court rendered judgment against Reyna and awarded judgment on the bank's counterclaim.  The Texas Court of Appeals agreed with the trial court and ruled that the plaintiff was not entitled to rescission because he refused both to repay the loans and to surrender the collateral for the notes.  Reyna, 911 S.W.2d at 853-54.  The loans were the direct product of the consolidation agreement between Reyna and the bank, and even though the court did not mention the Direct Product Rule, its decision comported with the rule.  Thus neither Woodling nor Reyna support the idea that profits derived from an independent transaction can constitute "fruits of the bargain."

Hence, all these cases cited by the Magistrate Judge are consistent with the Direct Product Rule, and are not authority that support a return of a collateral benefit.  Furthermore, if rescission is ultimately granted because a determination of fraud is made it would be paradoxical to require the victim to compensate the wrongdoer for a merely tangential benefit of the wrong.

15

The case cited by Defendants is consistent with the Direct Product Rule. Defendants point to <u>Felde v. Chrysler Credit Corp.</u>, 580 N.E.2d 191(Ill. App. 1991) as support of a general principle that a plaintiff should "not be left in a better position than the plaintiff would have been in had the transaction not taken place." (Defs. Response to Objections at 6.) In <u>Felde</u> the plaintiff paid $3,000 for a car and sought rescission of the purchase of the car when the car became defective after the first month. The plaintiff was entitled to return of her $3,000, but the financing company was entitled to $250 as the value of plaintiff's use of the car for the first month because rescission meant "restoration of the parties to their initial status." <u>Id.</u> at 199. The plaintiff herself admitted that her first $250 monthly payment was a fair price for use of the car prior to the time the car became defective.

The use of the car during the first month in <u>Felde</u> was a direct benefit of the purchase of the car, and so a set-off for this benefit was consistent with the Direct Product Rule. If the plaintiff had through serendipity picked up an eccentric hitch hiker like Howard Hughes in the car who gave her a gift of several million dollars, it would seem absurd to suggest that the defendants would be entitled under law to an additional set-off from her good fortune when she sought rescission of the purchase of the defective car. Restoration of the parties to their

16

initial status cannot mean restoration in a broad metaphysical sense, but rather only restoration with regard to what each party provided in terms of consideration under the contract and legal interest thereon.

The Magistrate Judge in claiming, "[b]ut for that agreement, Plaintiffs would not have had $173,966,650 to invest in other assets from which they have possibly derived substantial income or profits," has broadened the scope of "benefit conferred" and "benefit derived" to include all collateral benefits of the contract for Plaintiffs, including those that are unintended and unanticipated by Defendants.  A "but for" analysis greatly expands the underpinnings of the Direct Product Rule and is contrary to the law of rescission.  By failing to consider the Direct Product Rule, which is an element of the applicable legal standard in determining relevance of the discovery requests to the rescission claim, the Magistrate Judge's decision is contrary to law.

As to Discovery Requests No. 122 and No. 124, Plaintiffs' investment of part of the Sale Proceeds with Taubman is a transaction with an independent party, and it is unrelated to any consideration rendered under the contract between Plaintiffs and Defendants.  Under the Direct Product Rule it would be irrelevant to consider any profits or benefits received from the use of the Sale Proceeds when "deciding whether to grant rescission or what equitable terms to impose," as the

profits are collateral benefits.  Therefore, the Magistrate Judge's Order granting the

motion to compel Discovery Requests Nos. 122 and 124 is VACATED.

As to Discovery Request No. 123, documents issued prior to the

January 11, 2003 buy-sell offer that relate to any actual or contemplated agreement

to purchase, sell, or to exchange securities issued by Taubman may reflect the state

of mind of Plaintiff Gordon with respect to his decision to make the buy-sell offer.

His state of mind is relevant to a defense to the claims of fraudulent inducement

and rescission for material misrepresentations and/or omissions because reliance

on a misrepresentation by Defendants is a necessary factor in establishing

manipulative and deceptive devices (under 15 U.S.C. § 78j(b)) and fraud in both

the federal and state claims respectively.

Under Section 10(b) of the Securities and Exchange Act, a plaintiff in

order to have a valid private action must prove

> (1) a material misrepresentation or omission
> by the defendant,
> (2) scienter,
> (3) a connection between the misrepresentation or
> omission and the purchase  or sale of a security,
> (4) reliance upon the misrepresentation or
>  omission,
> (5) economic loss, and
> (6) loss causation.

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 129 S. Ct. 761, 768 (2008).

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." Id. at 769.  There is a presumption of a reliance if there is an omission of a material fact by one with a duty to disclose. Nonetheless, the presumption is rebuttable.  Id.  Furthermore, with regard to the state law claim for fraudulent inducement, a misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent.  Restatement  (Second) of Contracts § 167 (1981).  Hence, the Plaintiffs' state of mind is relevant to determine if any misrepresentation by Defendants substantially contributed to his decision to make the buy-sell offer or if Plaintiff Gordon was merely relying on plans he had with Taubman.

Since Plaintiffs set the price of the buy-sell offer, documents relating to any contemplated agreement to purchase Taubman securities are relevant  to the possible motivation Plaintiffs may have had as a seller to make the kind of monetary offer they did to Defendants; it could be possible at least in theory, that Plaintiffs set a lower than otherwise desirable sell offer in order to induce Defendants to exercise the buy option in the buy-sell offer in anticipation that Plaintiffs could profit by investing Sale Proceeds in Taubman.  Thus, such documents are relevant to the Defendants' ability to rebut the Plaintiffs' claim of

reliance upon alleged misrepresentations by Defendants as the reason for the

$173,966,650 offer.  The Magistrate Judge's Order granting the motion to compel

Discovery Request No. 123 is affirmed in part and vacated in part.  The order is

affirmed to the extent it grants the motion to compel documents relating to any

actual or contemplated agreement to purchase Taubman securities prior to the

January 11, 2003 made by Plaintiffs.  The Order is vacated in all other aspects as to

Discovery Request No. 123.

## II.  Objections to Reply Brief

As to Defendants' Objections to Plaintiffs' Reply Brief, Local Rule

1B 3-1(b) provides that once a party objecting to a Magistrate Judge's discovery

ruling files its objections and the opposing party files its response, "[t]he clerk

shall then submit the case file to the district judge."  The rule makes no provision

for reply briefs.  Accordingly, Defendants' objection is granted and the reply brief

of Plaintiffs is stricken.

## CONCLUSION

For all of the reasons stated above, the Court VACATES IN PART

AND AFFIRMS IN PART Magistrate Judge Foley's June 11, 2008 Order on the

Motion to Compel (Doc. # 323), as follows:  Defendants' Motion to Compel (Doc.

# 303) with respect to Discovery Requests Nos. 122 and 124 and those documents

in Discovery Request No. 123 that are after January 11, 2003 is DENIED.

Defendants' Motion to Compel with respect to Discovery Request No. 123 is

GRANTED IN PART.  Defendants are entitled to those documents created prior to

or on January 11, 2003.  The Court GRANTS Defendants' Objections to Plaintiffs'

Reply Brief.

IT IS SO ORDERED.


DATED:  Honolulu, Hawaii, November 25, 2008.


_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE


G.K. Las Vegas Limited Partnership and Sheldon Gordon v. Simon Property
Group, Inc., CV No. 04-01199 DAE-GWF; ORDER VACATING IN PART AND
AFFIRMING IN PART THE MAGISTRATE JUDGE'S ORDER;  ORDER
GRANTING DEFENDANTS' OBJECTION TO PLAINTIFFS' REPLY BRIEF