UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| G.K. LAS VEGAS LIMITED PARTNERSHIP and SHELDON GORDON, | ) ) ) | CV-S-04-1199 DAE-GWF |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SIMON PROPERTY GROUP, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS ON THE MOTIONS REGARDING FORENSIC EXAMINATIONS; (2) DENYING WITH PREJUDICE DEFENDANTS' SECOND EMERGENCY MOTION; (3) GRANTING PLAINTIFFS' COUNTER MOTION; (4) VACATING THIS COURT'S FORENSIC EXAMINATIONS ORDER; AND (5) MODIFYING THIS COURT'S SPOILATION ORDER TO DENY WITH PREJUDICE DEFENDANTS' MOTION FOR DISMISSAL OF CLAIMS AND MONETARY SANCTIONS BASED ON SPOILATION

Pursuant to Local Rule IB 3-1, the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants' Objections to the

Magistrate Judge's Findings and Recommendations, Defendants' Second

Emergency Motion to Enforce Orders Regarding Forensic Examinations,

Plaintiffs' Counter Motion to Vacate, and the supporting and opposing

memoranda, the Court hereby:  (1) **Adopts** the Magistrate Judge's Findings and

Recommendations on the Motions Regarding Forensic Examinations (Doc. # 468);

(2) **Denies with prejudice** Defendants' Second Emergency Motion (Doc. # 451);

(3) **Grants** Plaintiffs' Counter motion (Doc. # 453); (4) **Vacates** this Court's May

14, 2009 Order Regarding Forensic Examinations of Computer Equipment (Doc.

# 449); and (5) **Modifies** this Court's March 9, 2009 Order to deny with prejudice

Defendants' motion for dismissal of claims and monetary sanctions.  (Doc. # 437.)

<u>BACKGROUND</u>

The parties are familiar with the facts of this case, and therefore the

Court recites the background facts only as is necessary for a decision on the

Objection to the Magistrate Judge's Findings and Recommendation ("F&R").

(Doc. # 468.)  Additional background facts are contained in the F&R.

This action stems from a partnership formed between G.K. Las Vegas'

managing partner, Gordon Group Holdings, Ltd. ("Gordon"), and Simon Property

Group ("Simon").  On February 6, 1990, the parties created the Forum Developers

Limited Partnership ("FDLP") to develop and manage the Forum Shops, a Las

Vegas Strip shopping complex adjacent to Caesars Palace.  The FDLP partnership

agreement included a buy-sell provision, under which the parties had the right to

tender an all-cash price to purchase or, in the alternative, sell their pro rata interest

in FDLP.

2

In 1998, Gordon sought to invoke the buy-sell provision and sought financial backing from Starwood Capital Group LLC ("Starwood").  Gordon and Starwood entered into an agreement under which Gordon would have to pay Starwood a "break-up" fee if Gordon were unable to trigger the buy-sell.

In 1999, Hanna Struever, Gordon Vice President of Leasing, left the Gordon organization.  Sometime after her departure, her email files were "expunged."

In 2001, Gordon switched to a new network server to house all of the electronic data.  The network server that had been in use up to 2001 (the "2001 Server") was removed and all files were transferred onto the new server (the "New Server").

In September 2001, Randall Brant, partner and President of the Gordon organization left the company.  Brant had been heavily involved in, among other things, the proposed joint venture between Gordon and Starwood.  Brant executed the Gordon-Starwood agreement under which Gordon was later forced to pay Starwood a $2.5 million break-up fee after Simon allegedly violated the provision of Simon's agreement to allow Starwood to conduct an audit of FDLP books.  Sometime after Brant's departure, his email files were expunged.

In August 2003, after the buy-sell transaction closed, Gordon's IT vendor, Computronix, Inc., cleaned all the data off of the laptop of Scott Gordon. Scott Gordon had been President of Gordon from 2001 to Fall 2007 and had been involved in the buy-sell transaction of FDLP.

Sometime in 2006, after the original complaint in this action had been filed on August 27, 2004, Gordon discarded the 2001 Server.  The data was erased from the drives.

On January 10, 2008, Gordon filed its Third Amended Complaint. (Doc. # 279.)  This included claims of racketeering, fraud, breach of fiduciary duty, breach of contract, various torts, accounting, unjust enrichment, federal securities law violations, and rescission.

On December 1, 2008, Defendants filed a motion seeking, inter alia, dismissal and monetary sanctions based on Plaintiffs' alleged spoilation of evidence ("Spoilation Motion").  (Doc. # 399.)  In that motion, Defendants argued that "Plaintiffs' production of electronic documents, especially their production of emails from key employees, has been astoundingly deficient."  (Id. at 1.) Defendants stated that Plaintiffs produced only four emails from Scott Gordon's files, three emails from Brant's files, and none from Struever's files.  (Id.)

In an Order filed March 9, 2009 (the "Spoilation Order") following a February 23, 2009 hearing (the "Spoilation Hearing"), the Court found that Simon could not demonstrate at that time that Scott Gordon, Struever, and Brant's emails had indeed been completely destroyed such that they were wholly unavailable to the parties. (Doc. # 437 at 15-16.) Defendants' motion was denied without prejudice.

In an Order filed May 14, 2009, (the "Forensic Examinations Order"), the Court ordered that FTI Consulting ("FTI") conduct forensic examinations of computer equipment used by Scott Gordon, the New Server, and the Atlantic City server. (Doc. # 449.) The Court further ordered that the parties cooperate in good faith in carrying out the terms of the order.

On June 18, 2009, Defendants filed a Second Emergency Motion to Enforce Orders Regarding Forensic Examinations.[1] (Doc. # 451.) On June 23, 2009, Plaintiffs filed a Response to the Second Emergency Motion. (Doc. # 452.) On the same day, Plaintiffs filed a Counter Motion to Vacate the Court's May 14, 2009 Order, Modify Court's March 9, 2009 order, and Related Relief. (Doc. # 453.) On June 26, 2009, Defendants filed a Reply in support of their Second

---

[1] On July 15, 2009, Defendants filed a Notice of Withdrawal, and withdrew their portion of the Second Emergency Motion requesting that the server be made available for re-imaging. (Doc. # 465.)

Emergency Motion, (Doc. # 456), and Opposition to Plaintiffs' Counter Motion, (Doc. # 457).  On June 30, 2009, Plaintiff filed a Reply in support of their Counter Motion.  (Doc. # 460.)

On August 11, 2009, Magistrate Judge George Foley issued an F&R on the above-listed Motions Regarding Forensic Examinations.  (Doc. # 468.) Magistrate Judge Foley recommended that Defendants' Second Emergency Motion be denied, that Plaintiffs' Counter Motion be granted, and left it to this Court to determine whether the March 9, 2009 Order should be modified to deny Defendants' Spoilation Motion with prejudice.

On August 27, 2009, Institutional Defendants (the Simon Property Group) filed an Objection to Magistrate Judge's F&R.  (Doc. # 477.)  On the same day, Individual Defendants David Simon, Herbert Simon, and Melvin Simon joined in that objection and also objected on additional grounds.[2]  (Doc. # 476.) On September 11, 2009, Plaintiffs filed their Opposition.  (Doc. # 478.)  On

---

[2] Because the Individual Defendants have joined in Institutional Defendants' Objection, this Court will refer to the group collectively as "Defendants" throughout this Order.

6

September 23, 2009, the Court issued an order granting Defendants' request to file reply briefs in support of their objections.[3]

<u>STANDARD OF REVIEW</u>

Local Rule IB 3-1 provides that "[a] district judge may reconsider any pretrial matter referred to a magistrate judge in a civil . . . case . . . where it has been shown that the magistrate judge's ruling is clearly erroneous or contrary to law." LR IB 3-1. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard applies to the Magistrate Judge's factual findings while the "contrary to law" standard applies to the Magistrate Judge's legal conclusions. <u>Grimes v. City and County of San Francisco</u>, 951 F.2d 236, 240 (9th Cir. 1991). A factual finding is clearly erroneous if the reviewing court is left with "a definite and firm conviction that a mistake has been committed." <u>Burdick v. C.I.R.</u>, 979 F.2d 1369, 1370 (9th Cir. 1992). Under the contrary to law standard, the Court conducts a <u>de novo</u> review of the Magistrate

---

[3] Defendants did not formally file Replies. In their motions for leave to file reply briefs, however, Defendants submitted proposed reply briefs, and the Court granted Defendants leave to file replies "as attached in their respective motions." (Doc. # 482 at 2.) The Court therefore reviewed the Replies submitted by Defendants in their motions for leave to file reply briefs. (Docs. ## 480, 481.)

Judge's legal conclusions.  <u>Grimes</u>, 951 F.2d at 241; <u>Wolpin v.  Phillip Morris Inc.</u>, 189 F.R.D. 418, 422 (C.D. Cal. 1999). "The reviewing court may not simply substitute its judgment for that of the deciding court."  <u>Grimes</u>, 951 F.2d at 241.

<u>DISCUSSION</u>

The matter now before the Court is whether Institutional Defendants, through their ex parte communications with FTI, have compromised FTI as an independent expert.  The Court concludes that Institutional Defendants have in fact engaged in improper ex parte communication such that the Court may no longer rely on an independent analysis from FTI.  Furthermore, the Court agrees with Magistrate Judge Foley's conclusion that Defendants have forfeited their opportunity to obtain an independent forensic examination.  It was clear from the Court's rulings from the bench during the February 23, 2009 Spoilation Hearing and the Court's forensic orders that FTI was to be an independent, court appointed expert for the purpose of determining whether the emails of Scott Gordon, Brant, and Struever were accessible or if and how they had been removed.

I.      <u>FTI as Court Appointed Expert</u>

Plaintiffs argue, and Magistrate Judge Foley found, that FTI was a court appointed expert.  Defendants argue that FTI was not a court appointed expert but rather a "party-retained independent expert."  (Obj. at 3.)  Defendants

8

assert that Magistrate Judge Foley is "the only one who has ever expressed" the view that FTI is an independent expert within the meaning of Federal Rule of Evidence 706.  (Id. at 2.)  According to Defendants, Simon acted in good faith in treating FTI as a party-retained expert "subject to specific guidance articulated by the Court."  (Id. at 3.)

Rule 706 provides, in full:

(a) Appointment. The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

(b) Compensation. Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the court may allow. The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the fifth amendment. In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs.

9

(c) Disclosure of appointment. In the exercise of its discretion, the court may authorize disclosure to the jury of the fact that the court appointed the expert witness.

(d) Parties' experts of own selection. Nothing in this rule limits the parties in calling expert witnesses of their own selection.

Fed. R. Evid. 706.

A court may appoint an agreed-upon expert, or appoint its own, so long as the expert consents to act.  The witness may, but need not, testify at trial. The Court may allow compensation in an amount according to the Court's discretion.  The statute allows that the parties may pay in such proportion as the Court directs.

Defendants mischaracterize the requirements for appointment of a "court appointed" expert as set by Rule 706.  Defendants argue that FTI cannot be a court appointed expert as a matter of law, because:  (1) the Forensic Examinations Order did not expressly state that the party is appointed and retained by the Court under Rule 706; (2) the Forensic Examinations Order did not contain a provision for FTI's testimony or sworn statement; (3) the Forensic Examinations Order required that FTI communicate with Plaintiff and Defendants to provide the full report, and not the Court; (4) the Forensic Examinations Order contains no provision for cross examination or depositions; (5) FTI did not consent to be

10

retained by a U.S. District Court; (6) the Forensic Examinations Order did not explicitly prohibit ex parte communication; and (7) the parties were empowered to modify the terms of the order.  (Obj. at 16-18.)

In the first instance, Defendants' arguments are based largely on non-controlling authority.  Defendants rely on a number of cases in which a court followed certain procedures when dealing with a court appointed expert.  None of these cases, however, stand for the proposition that those actions undertaken by the courts in those cases are required under Rule 706.  The cases cited by Defendants are, in reality, fact-specific dispositions describing how a certain district court interacted with a particular expert at a certain stage in trial.

In particular, Defendants argue that the Court did not actually retain FTI.  (Obj. at 16.)  Defendants submit a case from the Southern District of New York, Leesona Corp. v. Varta Batteries, Inc., 522 F. Supp. 1304 (S.D.N.Y. 1981), to contrast this Court's actions.  In Leesona, the district court contacted an expert witness agreed upon by the parties.  Id. at 1311.  At the expert's request, the Court mailed packages of documents with summaries of the party's positions.  The court entered a consent order, which provided the expert with instructions on how to prepare for trial.  Id.  This Court did not engage in the same procedures as did the district court in Leesona, nor were those steps required.  The proceedings in

11

Leesona were simply at a different stage than was this action when the Court

issued its Forensic Examinations Order and held the Spoilation Hearing.  In

Leesona, a preliminary injunction application and hearing was consolidated with a

full trial on the merits, and the trial was advanced in order to be consolidated.  Id.

at 1309.  The expert was prepped for trial because the trial and hearing were being

held together.  In the case at hand, however, FTI was not retained for the sole

purpose of testifying at trial.  FTI was engaged for the purpose of discovering the

existence, if any, of certain emails.  Any subsequent trial testimony, or deposition,

would be ancillary to this purpose.  This is allowed under Rule 706, which states

only that a "witness deposition may be taken by any party" and the witness "may

be called to testify by the Court."  Fed. R. Evid. 706(a) (emphasis added).  There is

no requirement under Rule 706 that the Court draft a document detailing FTI's

potential future role at trial.  Regardless, this Court's Forensic Examinations Order

anticipated a potential need for testimony or depositions – as discussed below, FTI

is required to complete a report, which could become an issue at trial.

   Likewise, Defendants' reliance on Monolithic Power Systems, Inc. v

O2 Micro International Ltd., 558 F.3d 1341 (Fed. Cir. 2009), presumes that the

witness may only be retained to testify at trial.  In Monolithic, the district court

ordered the expert to make himself available for trial.  Id. at 1346.  The expert was

appointed by the court approximately 3 months before trial, for the purpose of testifying on contested and technically complicated engineering issues.  Id. at 1345. In contrast, FTI was appointed by this Court to uncover and collect evidence of the existence (or lack thereof) of emails, toward resolution of pre-trial motions.

Indeed, the Ninth Circuit has acknowledged that an expert witness may conduct a variety of tasks, including "advising parties of his findings, submitting to depositions, being called to testify, being cross-examined."  Reilly v. United States, 863 F.2d 149, 156 (9th Cir. 1988).  Here, FTI would advise the parties, and thereby the Court, of its finding as to the existence of emails.

Defendants then rely on Association of Mexican-American Educators v. State of California, 231 F.3d 572 (9th Cir. 2000), to argue that the Court's orders cannot be "transformed" into a Rule 706 appointment in anticipation that FTI may testify.  (Obj. at 16.)  In Mexican-American Educators, the district court expressly appointed an expert as a "technical advisor" and not as an expert witness.  231 F.3d at 590.  The court did not require a report from the advisor and did not allow cross examination.  Id.  The Ninth Circuit held that Rule 706 applies only to expert witnesses and not to technical advisors.  Id. at 591.  In that case, however, the district court utilized the advisor in a different capacity than the capacity in which this Court is using FTI.  In Mexican-American Educators, the district court used

the expert to help the court with technical matters to understand the briefing.  As the Ninth Circuit noted, the court <u>did not rely on the expert</u> as a source of evidence. <u>Id.</u>  This Court, in contrast, <u>would have</u> relied on FTI's findings as a source of evidence.  The results from FTI, as to the existence or erasure of emails, was intended to be evidence this Court would consider in disposing of Defendants' spoliation motions.  The scenario before this Court, therefore, is inapposite to the scenario in <u>Mexican-American Educators,</u> and the Ninth Circuit's distinction that the expert was a mere "technical advisor" is not directly on point.  FTI is not appointed to "organize, advise on, and help the court understand relevant scientific evidence."  <u>Federal Trade Comm'n v. Enforma Natural Products, Inc.,</u> 362 F.3d 1204, 1213 (9th Cir. 2004).  Nor is FTI a "tutor who aids the court in understanding the 'jargon and theory' relevant to the technical aspects of the evidence."  <u>Id.</u>  FTI will in fact be supplying the Court, and the parties, with new evidence.  As the Ninth Circuit has succinctly stated:  "A court-appointed expert is a witness subject to Rule 706 if the expert is called to testify <u>or if the court relies on the expert as an independent source of evidence</u>."  <u>Id.</u>

Moreover, FTI is required to submit a final report to both parties, which would of course become part of the record when the parties discussed the results at a hearing on the spoilation issue or submitted briefing on the matter. As Defendants know, the Court allowed Defendants to renew their spoilation motion and motion for sanctions pending the results of the investigation. (Obj. at 4-5.)

Defendants' next argument that no communication from FTI to the Court was required elevates form over substance. The Forensic Examinations Order requires that, once FTI is able to restore and produce documents, those documents be turned over to Plaintiffs, who will then in turn provide them to the Court if Plaintiffs believe them to be nonresponsive or privileged. (Forensic Exam. Order at 4-5.) The Court, or a special master, would then determine whether these documents could be released to Defendants. This, after all, was the entire purpose behind appointing FTI – delivering emails to Defendants that should have been uncovered during discovery. The requirement, per court order, that any "hits" for uncovered documents be first reviewed by Plaintiffs and then the Court satisfied the Court that Plaintiffs' and Defendants' rights would be duly protected.

Defendants further argue that FTI did not consent to act as an expert witness for the Court. (Obj. at 17.) This argument is disingenuous, as Defendants themselves document in their Second Emergency Motion that the agreement

15

entered into by FTI was defined by this Court's order.  (Sec. Emerg. Mot. at 8.)

The agreement read:

> This letter will confirm your retention of FTI Consulting ("FTI"), as
> electronic discovery and litigation consultants in connection with the
> above-captioned matter, pursuant to that specific Order Regarding
> Forensic Examinations of Computer Equipment (the "Order"), dated
> May 14, 2009 . . . . The Order outlines the scope of FTI's services for
> purposes of the Engagement, and is . . . specifically incorporated
> herein.

(Id.)  FTI was clearly retained pursuant to the May 14, 2009 Forensic Examination

Order.  Furthermore, as to Defendants' insistence that FTI was a party-retained

expert because only Defendants were paying FTI, this argument is unavailing.

First, as documented above, a court may order payment to an expert "in such

proportion and at such time as the court directs."  Fed. R. Evid. 706(a).  This Court

ordered Defendants to bear the responsibility for the charges, but allowed

Defendants to shift those costs to Plaintiffs upon an appropriate showing.

(Forensic Exam. Order at 6.)  Nowhere in Rule 706 or this Court's order is there

any indication that Defendants acquire any special rights because of this payment

obligation.  Second, the evidence in the record shows that FTI originally intended

to form the agreement between both Plaintiffs and Defendants, and therefore it was

at least clear to FTI what its role was to be until Defendants exerted influence.  In

the words of Michael Pace, FTI Senior Managing Director: "Our [FTI's] current

16

thinking is to considering having both sides (plaintiff and defendant), or counsel for both sides, sign the engagement document, in part because the order is entered pursuant to the joint agreement by the parties, and requires us to submit a report to all parties.  We have not made a final determination and are pleased to discuss tomorrow morning if you would like."  (Sec. Emerg. Mot. Ex. O at 43.)  Mr. James Rutten responded to this email: "Let's have Simon as the engaging party since it's the only one paying the bills."  (Id.)  It was never the Court's intention that Defendants treat FTI as their own private expert, as is clear for the record and transcripts.

As to Defendants' argument that the Court allowed the parties to stipulate to modification of the order, it is unconvincing.  Parties may stipulate to any number of matters.

Defendants then rely on various courts' use of the phrase "independent expert" in an attempt to show that the phrase does not refer to an expert under Rule 706 but instead to experts retained by a party that are not otherwise employed by that party.  (Obj. at 14.)  The Court is unconvinced by this argument.  First, the majority of these cases are either from out-of-circuit or unpublished and not controlling authority.  Second, none of the cases represent that the phrase "independent expert" cannot pertain to an expert appointed under Rule

17

706.  The fact is that this Court appointed an expert, who was to be independent.

Moreover, in this case the Court issued a specific order on the matter, and the

matter need not be resolved by parsing speech patterns.  The Court will

nevertheless address certain cases cited by Defendants.

In particular, this Court's reading of Williams v. Steuart Motor Co.,

494 F.2d 1074, 1081 (D.C. Cir. 1974), finds no explicit definition of "independent

expert witness," Defendants' assertions notwithstanding.  The court there was

discussing an entirely separate matter and was not investigating Rule 706

requirements.  Gaymar Industries, Inc. v. Cloud Nine, LLC, 2007 WL 582948, at

*3-4 (D. Utah Feb. 20, 2007), an unpublished decision from the District of Utah, is

likewise not definitive on this point.  The language relied on by Defendants was

made in passing by that court.

A Ninth Circuit case cited by Defendants, United States v. Rivera-

Guerrero, 426 F.3d 1130 (9th Cir. 2005), is barely on point at all.  This case

involved the need to involuntarily medicate a criminal defendant so that he could

be rendered competent.  Id. at 1134.  At a hearing on the issue, defense counsel

requested a continuance to consult "independent doctors" about the drugs proposed

to be used.  Id. at 1135.  "Counsel intended to use the continuance to interview

doctors, and help prepare a medical expert who would rebut the testimony of the . .

18

. physicians." <u>Id.</u>  No court order defining the scope of the expert's activities was issued or even contemplated.  There was no court order requiring the parties to cooperate if the medical expert evaluated the medicine.  In fact, the judge denied the request for the continuance.  <u>Id.</u>

In <u>Harris v. Lamarque</u>, 2005 WL 1704449, at *9-10 (E.D. Cal. July 15, 2005), an unpublished decision from the Eastern District of California, the court referred to a defense expert as an independent expert witness.  That is the extent of the court's focus on the expert.  The purpose of the court's discussion was the defendant's ineffective assistance of counsel claim.  There was no court order, or even true discussion, about that expert's appointment in any way relevant to Rule 706.  Defendants cannot rely on this as "proof" that a court's passing reference to an independent witness precludes that term from applying to a Rule 706 witness.

Defendants further attempt to morph Ninth Circuit language into a definition of "independent expert" when they cite to <u>Wood v. Stihl, Inc.</u>, 705 F.2d 1101, 1106 (9th Cir. 1983).  The Ninth Circuit refers to an expert as independent, but the context of that statement is not instructive here.  The court was reviewing whether the trial court improperly rejected the testimony of witnesses.  The court once referred to the witness as a "non-party or independent technical expert of the

appellant." Id.  As with the cases discussed above, in Wood there is no discussion of the nature of an expert's appointment via court order.

Defendants also clutch to a single sentence fragment from the February 23, 2009 Spoilation Hearing as alleged evidence that the Court never intended to appoint an expert.  Defendants quote the Court's question "[D]o you want to do a forensic search . . . ?"  (Obj. at 15.)  This is entirely out of context from the Court's other statements, as document by Magistrate Judge Foley.

Finally, the Court is not persuaded by Defendants' reliance on Sterle v. Elizabeth Arden, Inc., 2008 WL 961216 (D. Conn. Apr. 9, 2008), an unpublished decision from the District of Connecticut.  The case is admittedly similar, and involved a forensic expert appointed to uncover reports.  One party sought to stop the exam because the other party provided assistance and materials to the expert.  There, the court concluded that the consultant was neutral despite certain communications with one party, in part because the court order required that the consultant be mutually agreed upon.  The court held the party who sought to stop the examination in contempt.  This Court disagrees with that somewhat conclusory decision.  Moreover, the conduct in that case did not rise to the egregious level seen here.

It is astounding to this Court that after extensive discussions on this matter during the February 23, 2009 Spoliation Hearing, Defendants claim that this Court did not make it clear that FTI was to be an independent, neutral, court expert. The fact that this Court's Forensic Examinations Order did not explicitly bar ex parte communication of the level that Defendants purportedly engaged in, as the Court could have, does not obviate the rest of the record that is replete with examples of this Court's intention.  The Court, in its discretion, has given Defendants ample opportunities to move forward with their spoliation motions and forensic discovery.[4]  Defendants now apparently seek to take advantage of the Court's lenience.

As documented by Magistrate Judge Foley's Order and Plaintiffs' Opposition, the Court repeated multiple times during the February 23, 2009 Spoliation Hearing that the expert would have to be independent, approved by both parties and the court, operate under a strict order, with production made to the court.  (Pl.'s Opp'n at 5 n.1.)  At the hearing, the Court specifically forbade Defendants from doing a forensic analysis on its own without the Court.  The Court specifically instructed Defendants that a court order would be required

---

[4] Defendants did not move for forensic examination of Plaintiffs' computers during discovery or soon thereafter.  Nevertheless, this Court allowed a forensic examination to go forward.

before an expert was retained.  (Id. at 8 n.3.)  Indeed, as Plaintiffs note, the "core

principle governing the Court's May 14, 2009 designation of [FTI] to conduct

forensic examinations of Gordon's computers was that the examiner must be an

'independent third party expert' who would operate only under 'a very strict

order.'" (Pl.'s Resp. to Sec. Emerg. Mot. at 2 (citing Transcript of Feb. 23, 2009 at

22-23, 54).)  And the Forensic Examinations Order itself explicitly requires that

the parties cooperate to carry out the terms of the order – Defendants were not

given free reign to independently communicate with FTI about executing FTI's

tasks.  (Forensic Exam. Order at 6.)

      Defendants themselves seem to acknowledge that the forensic

examination was a Court-ordered process in their own Second Emergency Motion

when they argue that "the forensic examination 'sideshow' is not 'Simon's,' but a

process ordered by the Court."  (Sec. Emerg. Mot. at 3.)  Defendants cannot have it

both ways; Defendants may not argue that the forensic examination was court-

ordered when supporting their own spoliation motion, and then argue that the court

merely provided the scope of independent examination by a "party-retained" expert

when disputing the Magistrate Judge's findings and recommendation.

      As a final matter, Plaintiffs state that the communications between

FTI and Defendants may have been privileged, were it true that FTI was a party-

retained expert.  (Opp'n at 8.)  This matter is not fully briefed by the parties, but the Court will note that Defendants have not attempted to assert any privilege regarding the communications that Plaintiffs and Magistrate Judge Foley have reviewed.

For the reasons discussed above, the Court hereby adopts Magistrate Judge Foley's finding that FTI was a court appointed expert pursuant to Rule 706.

II.     Defendants' Ex Parte Communication with FTI Consulting

A.     Institutional Defendants

There is a meaningful distinction between communicating with FTI on practical details such as scheduling the date and time of examinations, and holding meetings with FTI without notifying opposing counsel and providing FTI with legal documents, some of which were under a protective order.

According to Mr. Rutten, Institutional Defendant's attorney, Mr. Rutten and his law firm supplied FTI with various legal documents that FTI was not able to access on its own.  (Rutten Sec. Emerg. Mot. Decl. ¶ 8.)  Mr. Rutten stated:

> [W]e supplied [FTI] with various documents that were not available on PACER or that are otherwise germane to its work as a forensic examiner.  For example, FTI asked me for examples of Scott Gordon e-mails that had been produced solely from the files of people other than Scott Gordon.  FTI told me that having such examples might help

it refine its forensic searching.  FTI was given several examples in
response to this request.

(Id.)  Apparently, Plaintiffs were not contacted before Defendants provided FTI

with these case documents.

Institutional Defendants also provided FTI with copies of Plaintiffs'

Opposition to Defendants' Spoliation Motion, Defendants' own motion and

exhibits, and transcripts of depositions.  (Id. at 16-20.)  Notably, FTI was not able

to access some of these documents on its own due to the protective order in place.

It is apparent from the record that Institutional Defendants did not coordinate with

Plaintiffs or even notify Plaintiffs prior to releasing these protected court records to

FTI.

The Forensic Examinations Order clearly delineated FTI's tasks and

the scope of information FTI was to review.  FTI was instructed to examine only

certain identified computer equipment.  (Forensic Exam. Order at 1-2.)  Paragraph

8 bound FTI to the terms of the February 7, 2007 Confidentiality Protective Order

as pertaining to the data FTI might uncover from the computers.  (Id. at 6.)

Nowhere in the Order was FTI instructed to review the parties' legal documents.  If

FTI truly needed to review legal documents or other emails, then Institutional

Defendants should have cooperated in good faith with Plaintiffs, and certainly

24

informed Plaintiffs of FTI's request, in conformance with the Forensic

Examinations Order's mandate to cooperate.  Even assuming FTI initiated some of

the communication with Institutional Defendants and counsel, the parties to this

case are bound by this Court's orders and are accountable.

The May 19, 2009 meeting between defense counsel and FTI in

particular gives this Court pause.  Defense counsel argues that this private ex parte

meeting was necessary to discuss FTI's qualifications as the forensic expert, to

discuss who would perform the work, and coordinate logistics of travel and

computer access.  The Court questions this rationale, as did Magistrate Judge

Foley.  Mr. Rutten admitted that FTI was proposed as the expert as early as March

24, 2009, and confirmed by Plaintiffs on April 14, 2009.  Why a meeting in May

was needed is not clear.  Certainly, if the true purpose was to coordinate travel and

computer access, then Plaintiffs should have been involved, as it was their

computer equipment that was to be inspected.  Counsel's argument that the

"forensic examinations are important to Simon, and Simon is the only one paying

FTI's bills," is both disingenuous and unconvincing.  First, it is true that

Institutional Defendants are fronting the costs per the Court's order, but the Court

also anticipated that Institutional Defendants might seek reimbursement from

Plaintiffs.[5]  (Forensic Exam. Order at 6.)  Second, the examinations are equally

important to Plaintiffs, as the results could have a direct bearing on this Court's

ruling on Defendants' spoilation motions.

As for the controversy surrounding the extent of FTI's involvement in

the dispute over the "water damaged laptop," these events as summarized in the

F&R add to the overall air of impropriety that has characterized the entire forensic

examination process.  FTI does not work for Defendants, and Defendants should

not have attempted to use FTI as a liaison with Plaintiffs' offices or counsel.

Defendants argue that Plaintiffs also had ex parte contact with FTI.  In

their Objections, Defendants state that "Plaintiffs forced a situation where they had

exclusive access to FTI while FTI imaged the servers."  (Obj. at 20.)  According to

the record, FTI was in the Greenwich offices to conduct imaging of computer

servers at the same time that Gordon's general counsel was present in his office.

This is not the type of "ex parte communication" that is reasonably barred under

the Court's orders.  The Court never directed staff to vacate their

_____

[5] Paragraph 7 of the order states "Defendants shall bear responsibility for FTI Consulting's charges, without prejudice to Defendants' right to seek to shift those costs to Plaintiffs upon an appropriate showing."  (Forensic Exam. Order at 6.)

place of business while FTI conducted its investigation.  This type of contact pales in comparison to the purposeful exchanges Defendants entered into with FTI.

Defendants emphasize, and seemingly use as a defense for their own conduct, that Plaintiffs have not been forthcoming with evidence.  Indeed, this possibility is why this Court engaged an independent expert.  However, Defendants may not then violate the terms of this Court's order as they strive to uncover evidence.

These ex parte meetings with FTI and Institutional Defendants' delivery of legal documents to FTI without consulting with Plaintiffs, taken as a whole, leave this Court to conclude that FTI's role as an independent expert has been compromised.  This Court cannot rely on the results in FTI's investigation when evaluating Defendants' spoilation allegations.  Institutional Defendants treated FTI as their own personal expert, without giving due respect to this Court's directions in the Spoilation Hearing and the Forensic Examinations Order.  In its de novo review, this Court has come to the inescapable conclusion that FTI's impartiality as a forensic expert was destroyed for these purposes.  The Court ordered that Defendants work cooperatively with Plaintiffs in good faith, and Institutional Defendants have violated this order.  The Court sought to rely on FTI's findings as evidence, but due to Institutional Defendants' own actions, FTI's

27

role as impartial expert is no longer reliable.[6]  Defendants have forfeited any

further opportunity to obtain an independent forensic examination.

    B.    Individual Defendants

        Individual Defendants separately object to the F&R on the basis that

"stopping the forensic examination process would sanction the Individual

Defendants for allegedly 'improper' conduct that neither they nor their counsel

played any part in."  (Individual Def. Obj. at 1.)  The Court questions this

reasoning, as Individual Defendants have largely joined with Institutional

Defendants' motions and did not separately request a forensic exam.  The parties

dispute Individual Defendants' role in these requests.  There is also no briefing

before this Court concerning whether Individual Defendants at any time opposed

Institutional Defendants and counsel's activities or to what extent they were aware

of the behavior.  These issues notwithstanding, however, the fact remains that this

---

[6] The court is unconvinced by Defendants' arguments that FTI role has not
been corrupted "because FTI is not tasked with making 'soft' determinations such
as psychological evaluations or credibility judgments."  (Obj. at 23.)  FTI is
charged with examining computer hardware and data, and is an independent expert
that this Court intended to rely upon for technical evidence about which this Court
has no comparable expertise.  This Court cannot and should not rely upon
evidentiary reports that are produced by an expert that was in essence treated as
and operated like one party's private expert.

Court cannot rely on the independence of FTI.  To allow the examinations to go forward for Individual Defendants but not Institutional Defendants is senseless.

      C.    <u>Remedy</u>

          Defendants argue that, even if this Court were to find that FTI's impartiality has been compromised, the Court should consider a "less severe remed[y] than shutting down the search for missing evidence."  (Obj. at 23.) Defendants cite to <u>In re Phenylpropanolamine (PPA) Products Liability Litigation</u>, 460 F.3d 1217, 1228 (9th Cir. 2006), to support their argument that this Court must consider less drastic "sanctions."  The case Defendants rely on, however, deals with outright dismissal of actions.  The Ninth Circuit stated:  "The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions."  <u>Id.</u> (quotations omitted).

          This Court is not ordering a dismissal of this action.  The Court is not at this time holding either party or counsel in contempt.  The Court is merely putting a stop to evidentiary discovery that the Court, in its considered discretion, allowed to proceed despite the fact that discovery had concluded.[7]  The Court

---

[7] The time period for factual discovery concluded on May 1, 2008, with some exceptions.

proposed an independent expert for the purposes of uncovering additional evidence that Defendants believed might be available, even though the time period for discovery had long passed.  That expert has now been compromised.  The Court's remedy in this case is not to enter a final judgment against Defendants, but rather to restrict the tainted evidence resulting from those investigations.

Defendants suggest that FTI "hand off the data it collected to another agreed-upon vendor, who can perform the work in FTI's stead."  (Obj. at 24.)  The Court declines to appoint another expert.  As discussed above, the time for discovery has long since passed.  The Court was willing to entertain additional evidentiary discovery for the purposes of Defendants' spoliation motion, but Defendants have abused their opportunity.  This affair has been conducted at great cost and burden to both parties and this Court.

III.    Defendants' Second Emergency Motion

The Court recognizes, as it has before, that the minimal email production by Plaintiffs is troubling.  The Court's interest in uncovering any remaining emails did not, however, give Institutional Defendants free reign to improperly use the appointed independent expert.

Defendants' Second Emergency Motion presumes that FTI's forensic examination will go forward.  For reasons discussed above in this Court's <u>de novo</u>

review, it may not.  To quote Magistrate Judge Foley: "Because Defendants'

counsel have acted improperly and have compromised the forensic expert's

impartiality, Defendants have forfeited the opportunity to obtain an independent

forensic examination."  (F&R at 18.)  Accordingly, the Court hereby adopts the

findings and recommendation, and Defendants' motion is DENIED WITH

PREJUDICE.

IV.   <u>Plaintiffs' Counter Motion Regarding the Court's Forensic Examinations
       Order and Spoilation Order</u>

Plaintiffs request that this Court vacate the May 14, 2009 Forensic

Examinations Order, order all computer materials obtained by FTI returned to

Plaintiffs, and modify the March 9, 2009 Spoilation Order to deny Defendants'

spoilation motion with prejudice.

First, for the reasons set forth above, this Court adopts the Magistrate

Judge's recommended and VACATES this Court's Forensic Examinations Order.

All forensic examinations of Plaintiffs' computers, as described in the order, shall

cease immediately as of the date this Order is filed.  All computer materials

obtained from Plaintiffs by FTI shall be returned to Plaintiffs within 30 days of the

filing of this Order.

Second, the Court MODIFIES its March 9, 2009 Spoilation Order to now DENY WITH PREJUDICE Defendants' December 1, 2008 motion for "(A) Dismissal of claims, or in the alternative, an adverse inference instruction; and (B) Monetary sanctions." Defendants' motion had sought dismissal of Plaintiffs' claims and/or sanctions based on Plaintiffs' alleged spoilation of evidence. This Court, in the Spoilation Order, determined that Defendants had not demonstrated that emails were, in fact, destroyed, had not proved Plaintiffs' duty to preserve certain email files, and had not proven that Plaintiffs had in fact spoiled evidence at all. At that time, the Court denied Defendants' motion without prejudice because a forensic examination was anticipated. This forensic examination is now terminated. Therefore, Defendants have not met their burden to demonstrate spoilation. The motion is therefore denied with prejudice.

## CONCLUSION

For the reasons stated above, the Court: (1) Adopts the Magistrate Judge's Findings and Recommendations on the Motions Regarding Forensic Examinations; (2) Denies with Prejudice Defendants' Second Emergency Motion; (3) Grants Plaintiffs' Counter motion; (4) Vacates this Court's May 14, 2009 Order Regarding Forensic Examinations of Computer Equipment; and (5) Modifies this Court's March 9, 2009 Order.

The Court's March 9, 2009 Order is now modified to Deny with Prejudice Defendants' December 1, 2008 motion for "(A) Dismissal of claims, or in the alternative, an adverse inference instruction; and (B) Monetary sanctions."

All forensic examinations of Plaintiffs' computers shall cease immediately as of the date this Order is filed.  All computer materials obtained from Plaintiffs by FTI shall be returned to Plaintiffs within 30 days of the filing of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, November 30, 2009.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE


G.K. Las Vegas Limited Partnership vs. Simon Property Group, Inc., et al., CV-S-04-1199 DAE-GWF; ORDER: (1) ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS ON THE MOTIONS REGARDING FORENSIC EXAMINATIONS; (2) DENYING WITH PREJUDICE DEFENDANTS' SECOND EMERGENCY MOTION; (3) GRANTING PLAINTIFFS' COUNTER MOTION; (4) VACATING THIS COURT'S FORENSIC EXAMINATIONS ORDER; AND (5) MODIFYING THIS COURT'S SPOILATION ORDER TO DENY WITH PREJUDICE DEFENDANTS' MOTION FOR DISMISSAL OF CLAIMS AND MONETARY SANCTIONS BASED ON SPOILATION